884 F.2d 1393
 51 Fair Empl.Prac.Cas. 112
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anthony ROBY, Plaintiff-Appellant,
v.
The CENTER COMPANIES, Defendant-Appellee.
 No. 88-1019.
 United States Court of Appeals, Sixth Circuit.
 Sept. 19, 1989.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and HENRY R. WILHOIT, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from the dismissal of the plaintiff's lawsuit because of his alleged failure to let himself be deposed by the defendant. Having concluded, on the highly unusual facts presented here, that the dismissal represented an abuse of judicial discretion, we shall reverse the judgment and direct that the case be reinstated.
 
 
 2
 * Joined by four other black males and one black female, plaintiff Anthony Roby sued defendant Center Companies in federal district court for alleged violations of both 42 U.S.C. Sec. 1981 and Michigan's Elliott-Larsen Act (MCLA Secs. 37.2101 et seq.), as well as intentional infliction of emotional distress, assault, and other common law torts. The defendant was in the business of providing security services at shopping malls in the Detroit area; the plaintiffs alleged that they had been employed by the defendant as "security police officers," and in the course of their employment had suffered various wrongs at the defendant's hands because of their race or sex. All of the claims but those for race and sex discrimination and intentional infliction of emotional distress were eventually dismissed on motion.
 
 
 3
 The defendant began taking discovery soon after the lawsuit was filed in October of 1986. Mr. Roby's deposition was noticed for December 16, 1986, but the deposition was apparently cancelled by the defendant.
 
 
 4
 The deposition was renoticed for March 16, 1987. By letter dated March 11, 1987, Mr. Roby's attorney advised defendant's counsel that "due to Mr. Anthony Roby's mental condition diagnosed by his Psychiatrist, we are unable to meet for the deposition scheduled, Monday, March 16, 1987. However, if possible we may serve him written questions." Attached to the letter were two notes from the psychiatrist, a Dr. Zapata. One, dated January 16, 1986 (presumably intended for January 16, 1987), said that "[t]he medication that Mr. Roby is taking at this time is temporalilly [sic] making a loss of memory with him." The second note said that "Dr. Lanzisera and I both agree that now [Roby] seems to be in control of himself but we are afraid that if he is exposed to mental pressure during a deposition on March 16, 1987, he may lose control of himself."
 
 
 5
 Upon receipt of these communications, defense counsel telephoned Mr. Roby's lawyer and told him that the defendant would move for dismissal of the case if Mr. Roby failed to show up for his deposition on March 16. Mr. Roby did in fact, present himself at the appointed time and place, and was placed under oath. The defendant's lawyer began the deposition by inquiring about the medications Mr. Roby was taking. After a series of questions and answers on this subject, defense counsel announced that Mr. Roby was mentally incapable of proceeding with the deposition. Plaintiff's counsel disagreed: "Nowhere in my talks with his doctors or in the results that you have in your hand does it indicate that anywhere along the course of this lawsuit has any one of the Plaintiffs been incapable of giving a deposition. My thoughts on the matter are that I don't think Mr. Roby is incapable."
 
 
 6
 The lawyers agreed that defense counsel would attempt to discuss Mr. Roby's state of mind with his psychiatrists before proceeding further. Dr. Zapata was therefore deposed on May 15, 1987; at this deposition he gave the opinion that his patient was suffering from psychotic depression.
 
 
 7
 A resumption of Mr. Roby's deposition was then noticed for July 10, 1987. Twenty-three minutes prior to the scheduled start of the deposition, Mr. Roby's lawyer called defense counsel to report that Mr. Roby was in Canada and could not continue with the deposition. (It turns out that although Mr. Roby had been planning such a trip, allegedly on the advice of his psychiatrist, he did not in fact go; he now says he would have been available to testify had his lawyer not been under the impression he was out of the country.)
 
 
 8
 After making his belated telephone call, Mr. Roby's lawyer went to the place appointed for the deposition and stated on the record that Mr. Roby would not be appearing because his doctor had advised that he would not be able to control his emotions in the stress of a deposition. The lawyer presented a letter from Dr. Zapata, dated July 6, 1987, stating that "[i]t is my clinical impression that Mr. Roby will not be able to tolerate a verbal, legal deposition. I am afraid that under the right amount of stress he will lose control of himself. Therefore, I am advising that he have a written deposition."
 
 
 9
 After this episode the defendant moved for an order of default against Mr. Roby, and as well as an order prohibiting him from testifying at trial. After hearing oral argument, the court directed that Mr. Roby submit to a deposition on September 9, 1987. The court warned "that if Plaintiff fails to appear for a deposition ... his claims against Defendant will be dismissed."
 
 
 10
 Mr. Roby did not fail to appear. He presented himself on September 9, 1987, as directed by the court, and testified at some length on matters pertinent to the lawsuit. After some 150 pages of deposition testimony Mr. Roby indicated that it was time for him to take his medication. Defense counsel stated--appropriately, we think--"I have no desire to stand in the way of this man taking his medication; I don't want to do that." Defense counsel suggested that the deposition be continued.
 
 
 11
 By agreement, the deposition was resumed on September 15, 1987. Mr. Roby continued to testify about the alleged racial harassment on which the lawsuit was predicated, but after a further 120 pages of deposition testimony had been taken, Mr. Roby's counsel terminated the deposition on the ground that Mr. Roby's medication was making it difficult for him to concentrate. Defense counsel then made the following statement:
 
 
 12
 "[I]f you are saying that Mr. Roby is incapable, physically incapable of completing the deposition at this point in time because of the medication he just took, then be that as it may. I don't see how we can continue. I don't see how we are going to be able to continue with this deposition in the foreseeable future or complete this deposition in the foreseeable future. That being the case, I have no alternative, Mr. Bass, but to move for a dismissal of this lawsuit."
 
 
 13
 Mr. Roby's counsel said he would move for a protective order to prevent further deposition sessions, and he did so move a few days later.
 
 
 14
 In a motion dated September 23, 1987, the defendant sought an order dismissing Mr. Roby from the action. The district court granted the motion. The court stated:
 
 
 15
 "Roby cannot dictate how defendant's counsel conducts its discovery (i.e. by oral or written deposition), or by whom he will be deposed. Roby and his counsel have used every method within their means to delay the completion of Roby's deposition. It would be unfair to defendant to let Roby avoid deposition and then let him testify at trial, which will be at least as stressful, if not more stressful, than testifying at deposition. There is no excuse for the action of Roby's counsel in this matter in the handling of discovery matters. For these reasons, defendant's motion to dismiss plaintiff Roby is granted."
 
 
 16
 The plaintiff then brought the present appeal pro se.
 
 II
 
 17
 Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey an order to provide discovery, the trial court "may make such orders in regard to the failure as are just...." The court may, among other things, enter
 
 
 18
 "An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Rule 37(b)(2)(C), Fed.R.Civ.P.
 
 
 19
 The question for a court reviewing a Rule 37(b) order of dismissal is "not whether ... [it] would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976). A reviewing court must also keep in mind that the purpose behind a Rule 37(b) dismissal is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Id. at 643.
 
 This court has said that
 
 20
 "Among the factors to be considered in reviewing the imposition of sanctions for an abuse of discretion, the appellate court should consider: (1) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, (2) whether the dismissed party was warned that failure to cooperate could lead to dismissal, and (3) whether less drastic sanctions were imposed or considered before dismissal was ordered."
 
 
 21
 Taylor v. Medtronics, Inc., 861 F.2d 980, 986 (6th Cir.1988), citing Regional Refuse Systems, Inc. v. Inland Reclamation Company, 842 F.2d 150, 155 (6th Cir.1988). We have also given consideration to whether the failure to comply with a discovery order was primarily the fault of the party himself, or was the fault of his attorney. Thus in Regional Refuse, where we upheld the dismissal of a complaint for the plaintiff's failure to submit to a deposition, it was emphasized that it was not just the plaintiff's attorney who was engaging in obstructive conduct, but the plaintiff himself: "While this circuit has been more ready than others to reverse dismissals for disobedience to discovery orders, especially when it appears that the party is blameless, this is not a case in which a party has simply failed to appear and no one is clearly at fault except for the party's attorney." 842 F.2d at 155. (The contumacious conduct engaged in by the Regional Refuse plaintiff included repeatedly postponing the deposition, giving "vague and uninformative" answers when he finally did show up, appearing for deposition sessions one hour late, failing to return to a deposition session after the lunch break, and submitting so many proposed changes to the deposition transcript that the court concluded they altered it to such a degree as to require a reopening of the deposition.)
 
 
 22
 The threshold question to be considered in the case at bar is whether plaintiff Roby did, in fact, "fail[ ] to obey an order to provide or permit discovery," within the meaning of those words as used in Rule 37(b)(2). The order in question, as we have noted, told Mr. Roby to submit to a deposition on September 9, 1987. He certainly did as he was told as far as showing up was concerned, and he responded to questions until the point, 150 pages into the transcript, when he expressed a desire to take his medication. At that juncture defense counsel himself said that he did not want to stand in the way of Mr. Roby's taking his medication, so it is difficult to see how any violation of the court's order could have occurred on September 9.
 
 
 23
 If there was a violation of the order, it must have occurred at the continuation session held on September 15. We are obliged to give all due deference to the factual findings of the district court on such a question, and although the question is a close one, we are not prepared to say, given what had transpired earlier, that the trial court could not properly have found that a violation of the discovery order did occur then. Mr. Roby's personal culpability would be a highly relevant consideration in choosing among the various sanctions potentially available, however, and it does not seem to us that Mr. Roby's culpability was particularly great.
 
 
 24
 Assuming that there was a violation of the discovery order, it is clear to us that the first of the Medtronics criteria was met. The defendant "was prejudiced by the dismissed party's [assumed] failure to cooperate in discovery," because counsel had already had to prepare for the deposition several times, and this doubtless entailed some cost. If the deposition could not be completed, moreover, defendant would be placed at a distinct disadvantage at trial absent appropriate measures to correct the situation. The second Medtronics factor was also met; Mr. Roby had been warned that his case would be dismissed if he did not give his deposition.
 
 
 25
 The third criterion--that "less drastic sanctions [be] imposed or considered before dismissal was ordered"--is more troublesome. There is no indication, on the record before us, that the district court considered any sanction short of the most drastic one available. As far as we know, the district court gave no thought to the possibility of entering an order preventing Mr. Roby from testifying at trial regarding matters that he could not or would not testify to at his deposition. See United States v. Sumitomo Marine & Fire Insurance Company, 617 F.2d 1365 (9th Cir.1980) (when plaintiff repeatedly refused to answer interrogatories about its damages, order that it would not be allowed to produce any evidence at trial relating to its damages was not abuse of discretion). Neither does it appear that the court considered the possibility of requiring Mr. Roby to pay all reasonable expenses, including attorneys' fees, caused by failure to obey the court's discovery order.
 
 
 26
 Whether Mr. Roby's failure to continue with his deposition testimony on September 15 was truly unjustified is hard to say. His psychiatrist had suggested earlier that Mr. Roby's paranoia and other mental problems could make the deposition process dangerous to Mr. Roby himself and to others. Mr. Roby's testimony disclosed that he sometimes heard "voices" when no one else was present. These "voices" told him to "stop taking" the discrimination he had been experiencing, and at one point they told him to "hurt" his wife. He also testified that the defendant had "harassed" him by sending a woman in a low-cut dress to his house to ask for directions. Dr. Zapata testified in his own deposition that Mr. Roby had paranoid tendencies, and the doctor produced a report in which he noted that Mr. Roby had told him that he wanted to take revenge on the white race. Further, Dr. Zapata testified that Mr. Roby had told him that he suspected his phone was being bugged, and that people were peeking in his windows. We do not profess to be psychiatrists, but it certainly does not seem to us that we are dealing here with a garden-variety bad-faith refusal to disclose information on discovery.
 
 
 27
 The defendant seems to concede that Mr. Roby's mental illness and his need for frequent medication were the primary reasons Mr. Roby failed to complete his deposition. But "if Mr. Roby's memory is so impaired that he cannot give an oral deposition," defendant argued in the trial court, "he should be dismissed from this lawsuit for failure to prosecute his case...." We disagree. It may well be that Mr. Roby's case will not prove to be meritorious, and it might well be inappropriate to let Mr. Roby testify at trial on matters that the defendant could not explore in a pretrial deposition--but no justification has been shown for dismissing Mr. Roby as a party at this stage of the proceedings.
 
 
 28
 The defendant's brief on appeal leaves the reader with some impressions that may not be entirely fair to Mr. Roby. With respect to the deposition scheduled for December 16, 1986, for example, the brief says only that it "did not proceed as scheduled." Mr. Roby has sworn that defendant's counsel himself was responsible for cancelling the deposition, and the defendant has not disputed this. Further, the brief says that Roby "could not be deposed" on March 16, 1987; that deposition session, however, was ended by defendant's counsel, over the objection of Mr. Roby's lawyer. The latter, once the deposition finally began, maintained that Mr. Roby was capable of continuing it.
 
 
 29
 Speaking of the deposition sessions of September 9 and September 15, 1987, the brief says that the deposition "never progressed beyond biographical background information." In scanning the deposition transcripts, however which total over 250 pages, we note that Mr. Roby testified on such matters as an incident when he discovered vibrations in his automobile, allegedly caused by the defendants (deposition transcript, pp. 207-228); the occasion when a strange woman visited him at his house, allegedly at the instigation of the defendant (id. at 228-237); the frequency and nature of his meetings with the other plaintiffs regarding their planned lawsuit (id. at 100-121); and the location and possible revision of certain notes that he had made during his employment with the defendant (id. at 245-274). This is not mere "biographical background."
 
 
 30
 The judgment of dismissal is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 31
 Judge Wilhoit dissents.
 
 
 
 *
 Hon. Henry R. Wilhoit, United States District Judge for the Eastern District of Kentucky, sitting by designation